# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANIEL M. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00341-TWP-DML |
| | ) | |
| GREG ROSS and JAMES MYERS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Officer Greg Ross' ("Officer Ross") and James Myers' ("Officer Myers") (collectively, "the Officers"), Motion for Summary Judgment ([Filing No. 31](#)). The Officers, members of the City of Columbus, Indiana police department, claim qualified immunity in Plaintiff Daniel M. Smith's ("Mr. Smith") lawsuit for excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983. For the following reasons, the Officers' motion is **GRANTED**.

## I. BACKGROUND

The facts are not materially disputed and are considered in the light most favorable to Mr. Smith. Mr. Smith has specifically controverted only minor facts presented by the Officers, and thus, under Federal Rule of Civil Procedure 56 and Local Rule 56-1(f), the Court accepts the Officers' "Statement of Undisputed, Material Facts" as true, and notes where Mr. Smith disagrees. In the early morning hours of August 23, 2011, Columbus police officers responded to a report that a white male wearing a white cap had tried to enter a house. Officers began searching the area, including Officer Ross and Officer Myers, who was called to duty with his K-9 partner, Blitz.

Officer Myers was trained and certified to handle Blitz, and there is no challenge or dispute as to Blitz's training.

In the course of the search for the white male in a white cap, Officer Sara Goins ("Officer Goins") encountered Mr. Smith, who was wearing a white ball cap. Officer Goins ordered Mr. Smith to put his hands behind his head and back up toward her car. Mr. Smith initially followed her commands, but believing he had an outstanding warrant for his arrest, decided to run away. As he began to flee, Officer Goins stepped on Mr. Smith's shoe and grabbed at his shirt, causing her to fall. Mr. Smith lost a shoe and his cap as he began to run. Mr. Smith continued to run until he could go no further, at which point he entered a garage via a side door. Upon entering the garage, Mr. Smith locked the door and laid down near the front overhead door. He fell asleep.

Officers Ross and Myers continued the search for Mr. Smith, and Blitz led them to a garage and indicated that someone was near the front overhead door. Officer Myers loudly announced their presence and that of a K-9 and ordered that anyone inside needed to come out or the dog would be sent in, and anyone inside would be bit. Mr. Smith heard the barking and yelling, and after 45 seconds to 1 minute went to the side door to open it. Officers Ross and Myers also attempted to open the side door, and pushed it open.

Officers Ross and Myers encountered Mr. Smith standing in the dark garage and ordered him to put his hands on his head. Mr. Smith complied. The Officers then told him to get on the ground. Mr. Smith contends he immediately got on the ground, but the Officers contend that he first hesitated, took a step backward, then dropped to the ground. In any event, at that moment, the two Officers dropped down on Mr. Smith and one officer placed his knee on Mr. Smith's head. While the Officers were moving his arms back behind his back and pinning them, Officer Myers released Blitz. Blitz bit Mr. Smith on the left leg and left arm, as the Officers pinned Mr. Smith's

2

arms and cuffed him.  Mr. Smith was bitten about four times.  Mr. Smith asked the Officers to get the dog off of him and the Officers told him to stop resisting.  Officer Myers then called off Blitz and Mr. Smith was cuffed.  The entire incident happened quickly, in the span of about 8 to 10 seconds.  Mr. Smith contends that Blitz was not released to attack until he had been on the ground for 8 seconds.  *See* [Filing No. 31-5, at ECF pp. 33-34](#).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim."  *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment."  *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

Officers Ross and Myers base their motion for summary judgment on the doctrine of qualified immunity. "Qualified immunity bars a civil claim for damages against a government official when the official is performing a discretionary function and her conduct does not violate clearly established rights of which a reasonable person would have known." *Seiser v. City of Chicago*, 762 F.3d 647, 658 (7th Cir. 2014). Qualified immunity gives public officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). To overcome qualified immunity, a plaintiff must show both "(1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). It is within the Court's discretion to grant immunity on the basis that the right was not clearly established without determining whether there was a violation in the first place. *Id*; *see Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

Here, the Court finds there was no violation of Mr. Smith's Fourth Amendment rights. "The question whether the use of force during an arrest is proper under the Fourth Amendment depends on the objective reasonableness of the officer's actions, judged on the basis of the conditions the officer faced." *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009). The Court considers all the circumstances, including, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Mr. Smith argues that he was subject to unreasonable and excessive force when Blitz was released and bit him. He argues he posed no immediate threat to officers by the time Blitz was released, because he had ceased his flight, submitted to the Officers' authority, and was subdued.

He cites *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 863–64 (S.D. Ind. 2006), in which Fidler had fled arrest, hidden from officers, and subsequently demonstrated submission by laying down, rolling over, and putting up his hands saying "I give up." Afterward, an officer kicked and stomped on him for 2 minutes and a K-9 was released and attacked him. The court found that the officer's actions were not reasonable, "where force causing serious injury was employed after suspect was subdued or had otherwise submitted to the officer's authority and was not attempting to flee or resist arrest." *Id.* at 264. The facts of *Fidler*, however, are distinguishable from Mr. Smith's case.

First, Mr. Smith hid in a locked and dark garage before he was found by Officers Ross and Myers. Officers Ross and Myers were faced with a potentially dangerous situation, not knowing whether Mr. Smith was armed or had found a weapon in the garage. Mr. Smith had fled officers and hesitated before going to the garage's side door and laying on the ground. Second, in *Johnson*, a case more similar to these facts, the Seventh Circuit noted that officers are not required to take a suspect's apparent surrender at face value. 576 F.3d at 660. In that case, Johnson had fled officers, jumped a fence, turned around and said "I give up." A second later, the officer released his K-9 to subdue Johnson. Similarly, here, Officers Ross and Myers "had no idea how [Mr. Smith] was going to behave once he was cornered," *see id.*, especially when the Officers believed Mr. Smith hesitated and might again flee.

Additionally, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005) (quotation omitted). Officers are "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quotation

5

omitted). The situation here rapidly unfolded, in a span of 8 to 10 seconds, and the force was not unreasonable given the totality of the circumstances. According to Mr. Smith there was a small gap of 8 seconds between when he laid down and Blitz was released. Even so, the Court does not believe this is a significant lag in the law enforcement context, such that the force becomes unreasonable *per se*. For these reasons, the Court finds that there was not a violation of Mr. Smith's Fourth Amendment rights when Blitz was released and bit Mr. Smith.

Further, even if there were a constitutional violation, Officers Ross and Myers would still be entitled to qualified immunity. Aside from *Fidler*, which is readily distinguishable based on the differences of timing and violence, Mr. Smith has not shown a "clearly analogous case establishing a right to be free from the specific conduct at issue" or "conduct [that] is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). Having failed to meet his burden to overcome the applicability of qualified immunity, his claim fails.

## IV. CONCLUSION

Accordingly, Officer Ross' and Officer Myers' Motion for Summary Judgment (Filing No. 31) is **GRANTED**.

**SO ORDERED.**

Date: 10/15/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com


Ilene M. Smith
CHRISTOPHER MYERS & ASSOCIATES
ismith@myers-law.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Wayne E. Uhl
STEPHENSON MOROW & SEMLER
wuhl@stephlaw.com